UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Alice Colburn, | : | Case No. 1:08CV1508 |
| Plaintiff | : | Judge Christopher Boyko |
| v. | : | Magistrate Judge David S. Perelman |
| Commissioner of Social Security, | : | **REPORT AND RECOMMENDED DECISION** |
| Defendant | : | |

      This action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of defendant's final determination denying plaintiff's claim for supplemental security income benefits (SSI), 42 U.S.C. §1381 et seq., is pending decision upon the parties' submissions on the merits, pursuant to which plaintiff seeks entry of final judgment in her favor, alternatively, an order of remand, and defendant seeks final judgment upholding the decision below.

      The plaintiff applied for benefits on December 4, 2004. It is not clear what onset date she claimed, as the record does not contain a copy of her actual application and the information concerning her application is taken from a Leads/Protective Filing Worksheet, and on that document the typed onset date of November 12, 2003 is lined out and handwritten in its place is the year 2001.[1] Also missing from the record (which is certified as "full and accurate") is the Disability Report-Adult which in this Court's experience normally is completed along with the application, and which calls

---

[1] Considering that any SSI award could only be effectuated as of the date of application this is not a matter of critical importance.

for a statement of the claimant's alleged disabling impairments and the manner in which those impairments limit the claimant's ability to work.[2]

Upon denial of her claim at the state agency level the plaintiff requested de novo review by an Administrative Law Judge (ALJ). An evidentiary hearing was convened on April 19, 2007 by video conference with the ALJ in Orland Park, Illinois and the plaintiff in Mansfield, Ohio. The plaintiff appeared at that proceeding without counsel, and after being advised of her right to obtain representation chose to proceed pro se. Also testifying at that hearing was a vocational expert, Mr. Thomas Greszik.

On June 16, 2007 the ALJ issued a decision finding the plaintiff not disabled. The plaintiff then secured counsel, who prosecuted a request for review by the Appeals Council. On September 5, 2007 the Appeals Council set aside the ALJ's decision and remanded the matter for a further hearing. The basis of that ruling was as follows:

> Evidence obtained subsequent to the hearing was not proffered to the claimant as provided in **HALLEX I-2-7-30**.
>
> The claimant's obesity was not considered at Steps 2 and 3 of the sequential evaluation nor were the combined effects of the claimant's obesity and her other impairments evaluated in accordance with Social Security Ruling 02-1p.
>
> The hearing decision, Finding #4, indicates that the claimant has the residual functional capacity for sedentary work that would allow her to alternate between sitting and standing every 30 minutes; would not involve climbing ladders, ropes or scaffolds or more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, or crawling; would not involve working at heights or around moving machinery; and would not be performed in areas of concentrated exposure to pulmonary irritants. Rationale provided in support of this residual functional capacity however, indicates that the claimant can lift 10 pounds frequently, 20 pounds occasionally, stand and/or walk

---

[2] Handwritten on the Leads/Protective Filing Worksheet is "osteoarthritis, hbp [high blood pressure], overweight." How, when and why that notation was entered is unknown.

about 6 hours in an 8-hour day and sit about 6 hours in an 8-hour workday. Restrictions of this nature are indicative of the ability to perform a range of light work rather than sedentary work.

The decision indicates that the vocational expert's testimony is consistent with information found in the Dictionary of Occupational Titles (DOT). Although the vocational expert indicted that his testimony was consistent with the DOT, this response was provided prior to the inclusion of a sit/stand option in the hypothetical question. The Dictionary of Occupational Titles does not contain information regarding the need to alternate sitting and standing; therefore further inquiry into the vocational expert's basis for identifying these jobs is required to resolve this apparent conflict prior to concluding that the claimant can perform other jobs existing in significant numbers in the national economy.

Upon remand the Administrative Law Judge will:

Proffer the evidence obtained subsequent to the hearing to the claimant's representative and provide him with an opportunity to comment on the evidence and/or submit additional evidence (**HALLEX I-2-7-30**).

Evaluate the claimant's obesity in accordance with the provisions found in Social Security Ruling 02-1p.

Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 416.9456 and Social Security Rulings 96-8p).

Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14, and *Shelman v. Heckler*, 821 F.2d 316, 321-322 (6th Cir. 1987)). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-

4p).[3]

A second evidentiary hearing was convened on January 10, 2008, again by teleconference, with the ALJ in Orland Park, Illinois with a medical expert, Dr. Walter Miller, and a different vocational expert, Mr. Thomas Dunleavy, and the plaintiff and her counsel in Mansfield, Ohio.

At the outset of the hearing the plaintiff was asked as to her height and weight, and she responded that she was 5' 7" tall and weighed 354 pounds. When asked by her attorney "What are you, what are the most severe medical problems? The ones that are currently bothering you the most?" the plaintiff answered "The worst would be the osteoarthritis in my knees. The right knee is a lot worse than the left one." She then testified to suffering from "diabetic nerve pain in my feet," producing a burning sensation at times. She also maintained that in order to carry a gallon of milk she had to do that two-handed. She testified to a very limited life style, assisted by her daughter.

In his testimony Dr. Miller expressed some concerns regarding the plaintiff's medical care. As regards what the objective medical evidence established, he stated that although the plaintiff obviously had diabetes "The presence of diabetic neuropathy isn't clearly established in my judgment." He further testified that "She has knee discomfort or she has mild arthritis, osteoarthritis of her knee without any [inaudible]" but that "The MRI of the knee showed no meniscal or collateral [inaudible] ligament damage. Some swelling and edema of the soft tissues [inaudible] patellar, but there's no severe damage or significant damage to the knee itself." He also stated that the plaintiff's back and lumbar spine X-rays were negative. When questioned by plaintiff's counsel concerning the conclusions set out in a functional capacity evaluation performed in September 2007, which reflected that the plaintiff is severely limited, Dr. Miller stated "I don't find any basis for that in the record to

---

[3]The Appeals Council also noted that the plaintiff had filed another application for SSI on July 17, 2007, and ordered the two claims consolidated.

be honest with you. I mean there's osteoarthritis facts seen in some of the X-rays and the MRI does show some evidence of mild arthritis, but to say that she can't stand on her two feet, two legs, isn't based in any findings in the records."

On February 28, 2008 the ALJ entered her decision, which stands as the defendant's final determination consequent to denial of review by the Appeals Council on June 11, 2008. The headings of the ALJ's Findings of Fact and Conclusions of Law were:

1. The claimant has not engaged in substantial gainful activity since December 4, 2004, the application date (20 CFR §§416.920(b) and 416.971 *et seq*.).

2. The claimant has the following severe combination of impairments: degenerative joint disease, diabetes, hypertension, asthma, obesity, and mild osteoarthritis of knees (20 CFR §416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity (RFC) to perform light work with sit/stand option every 1/2 hour, no climbing ladders, ropes, or scaffolds, occasional climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling, and no concentrated exposure to pulmonary irritants such as dust or fumes. She must avoid exposure to heights or moving machinery.

5. The claimant is able to perform her past relevant job as a home health aide at the light exertional level (20 CFR §416.965).

6. The claimant has not been under a disability, as defined in the Social Security Act, since December 4, 2004, the date the application was filed (20 CFR §§416.920(f) and 416.920(g)).

While the ALJ held that the "claimants residual functional capacity does not preclude performance of her past relevant job as a home health aide at the light exertional level" she further

5

held, based upon the testimony of the vocational expert, that "There are also a significant number of sedentary jobs (including a sit/stand option) that she could perform such as an assembler, 6000 jobs, sorter/visual inspector, 4,000 jobs, and cashier, 10,000 jobs."

The standards which control on a review of this nature were summarized by the Sixth Circuit in Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) as follows:

> Judicial review of the Secretary's decision is limited in scope to determining whether the findings of fact made by the Secretary are supported by substantial evidence and deciding whether the Secretary employed the proper legal criteria in reaching her conclusion, Walston v. Gardner, 381 F.2d 580, 585 (6th Cir. 1967). This Court may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility, Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972). Rather "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. §405(g).
>
> The Supreme Court has stated that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantiality of the evidence must be based upon the record taken as a whole. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980), citing Futernick v. Richardson, 484 F.2d 647 (6th Cir. 1973). "Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the `substantiality of evidence must take into account whatever in the record fairly detracts from its weight'." Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978), quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474 (1951). "We may not focus and base our decision entirely on a single piece of evidence, and disregard other pertinent evidence." Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978).

In resolving the issue of whether the defendant's final determination is supported by substantial evidence the decision upon judicial review cannot turn upon whether the reviewing court agrees with the Secretary's determination. Indeed, the reviewing court may conclude that substantial evidence would support a final determination contrary to that arrived at by the defendant and yet be obliged to affirm the defendant's final determination. In Mullen v. Bowen, 800 F.2d 535, at 545 (6th

Cir. 1986), the court cited with approval the following from Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984):

> The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposition decision.

On this appeal the plaintiff advances the general argument that the ALJ's decision is not supported by substantial evidence, under which the following specific arguments are presented: (A) The ALJ erred in finding plaintiff capable of returning to her past relevant work; (B) the VE's testimony does not support a denial at the fifth step of the sequential evaluation process; and (C) the ALJ erred in failing to analyze Plaintiff's obesity and pain properly in accordance with Social Security Rulings 02-01p and 96-7p.

This Court finds the first of these arguments to be well taken.

The vocational expert first opined that the plaintiff would be capable of performing her past job as a home health aide in response to the hypothetical question from the ALJ which did not include a sit/stand option. He then testified:

> Q.  Alright. And now if I were to add the need to have a sit/stand option every half hour, would it affect the jobs you've identified or would there be other jobs?
>
> A.  Well, there would be other jobs, but in order to access these jobs, Judge, I'd be looking, we have to have seating as a part of her workday. I have to look at sedentary occupations [inaudible] find those jobs.

The ALJ specifically held that the plaintiff's general residual functional capacity to perform light work was modified "with sit/stand option every 1/2 hour." This being so, it is impossible to reconcile the conclusion that the plaintiff could perform her past relevant work as a home health aide

7

with the vocational expert's testimony that a person requiring a sit/stand option would be limited to jobs at the sedentary level.

This error, however, does not require reversal of the defendant's final determination, by virtue of the ALJ's ultimate holding that there are a significant number of jobs at the sedentary level including a sit/stand option which the plaintiff is capable of performing, specifying jobs of that nature identified by the vocational expert.

This leads to consideration of the second argument advanced by the plaintiff, which has two components.  It is first contended that the ALJ's holding predicated upon the testimony of the vocational expert that there exist "6,000 assembler jobs, 4,000 sorter/visual inspector jobs and 10,000 cashier jobs" at the sedentary level which could be performed by an individual requiring a sit/stand option cannot be upheld because "these numbers cannot be substantiated by the transcript, as critical pieces of the VE's testimony were inaudible."  It is also contended that "it is not clear from the available transcript that the VE reconciled the discrepancy between the Dictionary of Occupational Titles (hereinafter DOT) and his testimony regarding the availability of sedentary cashier jobs or the availability of jobs allowing for a sit/stand option.  (Id.)  The VE appears to have recognized the discrepancies, but he offered no substantive explanation or justification for his testimony contrary to the DOT, and the ALJ failed to inquire about the conflicts to resolve them."

This Court finds no merit in either argument.

There are several "Inaudible[s]" in the transcript of the vocational expert's testimony.  Nevertheless, this Court has no problem understanding the gist of the witness' testimony, and does not find that it has been shown that those gaps render the ALJ's reliance of the testimony to be erroneous.

As to the argument that there were discrepancies in the vocational expert's testimony vis-a-vis

8

the Dictionary of Occupational Titles, this Court does not find this to be substantiated by the record. In fact, the vocational expert testified:

> Q. All right. Then give me those jobs (INAUDIBLE) sedentary level with the same restrictions but with a sit/stand option (INAUDIBLE).
>
> A. Assemblers. There would be approximately 6000 assemblers. There would be some sorter/visual inspector jobs. That's one occupation and there would be at least 4000. And there would be cashiers. There would be at least (INAUDIBLE) with one diversion from the DOT and that would be cashier. Cashiers are (INAUDIBLE) light and I've identified these jobs (INAUDIBLE) sedentary (INAUDIBLE).
>
> Q. So the jobs that you've identified are consistent with those found in the Dictionary of Occupational Titles except for the cashier job that you just identified?
>
> A. Yes.
>
> Q. Including the need for, including the sit/stand option?
>
> A. Yes. Well, I should say that we all know that (INAUDIBLE) the DOT doesn't tell us (INAUDIBLE).

The plaintiff's third argument centers upon the factor of her obesity, it being contended that the ALJ failed to give proper weight (no pun intended) to two Social Security Rulings, one of which is directly pertinent to obesity, SSR 02-1p. The other pertains generally to the question of assessing a claimant's pain complaints, SSR 96-7p.

This Court agrees with the contention that the ALJ's statement "In making the RFC determination, I have considered class 3 morbid obesity (height of 5'7" and weight of 347 pounds (Body Mass Index (BMI) of 5434) on February 14, 2005, 344 pounds (BMI of 53.87) on September 20, 2007, and 354 pounds (BMI of 55.44) at the hearing) in accordance with Social Security Ruling 02-1p" could be more illuminating as to the ALJ's thought process. This Court, however, does not

agree with the contention that "the ALJ's analysis was inconsistent with the spirit and purpose of SSR 02-1p, and failed to comply with its requirements." While bare bones, this Court must give credence to the ALJ's statement that in assessing the plaintiff's claim of disability she had considered the plaintiff's obesity under the standards of SSR 02-1p.

While this Court, having carefully reviewed the entire record, considers this to be a very close case, this Court is constrained to conclude that the ALJ's evaluation of the credibility of the plaintiff's subjective complaints and her ultimate conclusion that the ALJ is not disabled (notwithstanding the flaw in the decision noted herein) were within her zone of choice under the substantial evidence standard. It is, accordingly, recommended that final judgment be entered in the defendant's favor.

s/DAVID S. PERELMAN
United States Magistrate Judge

DATE:　March 30, 2009

**OBJECTIONS**

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).