UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Alice Colburn,** | ) | **CASE NO. 1:08CV01508** |
| | ) | |
| Plaintiff | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon Plaintiff's Objection to the Magistrate Judge's Report and Recommended Decision.  For the following reasons, the Court ADOPTS the Report and Recommended Decision.

**I. FACTS**

On December 4, 2004, Plaintiff, Alice Colburn ("Colburn"), protectively applied for Supplemental Security Income ("SSI") benefits, alleging a disability onset date of November 1, 2001.  At the time of her alleged disability onset, Colburn was 39 years old.  She had a ninth grade education.  Her past work included jobs as a nursing home aide, prep cook, pizza baker and home health care aide.  Colburn has not engaged in substantial gainful activity since her application date of December 4, 2004.

Colburn's application for SSI alleged disability due to hypertension, bilateral osteoarthritis of the knees, and morbid obesity.  She had also been diagnosed with dependent edema, borderline diabetes, and psoriasis.  On January 28, 2005, state reviewing physician Paul T. Heban, M.D., reviewed Colburn's file and completed a Case Analysis and Physical Residual

Functional Capacity ("RFC") Assessment. He determined that Colburn's ailments did not meet or equal the criteria for impairment.[1] The Agency denied her application initially and on reconsideration. During the next three years, Colburn continued to see her physician, Dr. Torski, regarding her ongoing health problems. As her weight increased, her symptoms worsened and multiplied, but not to the point where surgery or further intervention were warranted by her treating physician.

In August 2005 Colburn requested a hearing before an Administrative Law Judge ("ALJ"). The hearing took place in April 2007, before ALJ Denise McDuffie Martin. Both Colburn and a vocational expert ("VE") testified. The ALJ advised Colburn of her right to counsel, but she wished to proceed *pro se.* On June 16, 2007, the ALJ issued an Unfavorable Notice of Decision, finding Colburn capable of performing a reduced range of sedentary work. Colburn secured counsel and appealed, and on September 5, 2007, the Appeals Council remanded the case for further review.

On remand, the Appeals Council ordered the ALJ to:

- Proffer the evidence obtained subsequent to the hearing to the claimant's representative and provide her with an opportunity to comment on the evidence and/or submit additional evidence.

- Evaluate the claimant's obesity in accordance with the provisions found in Social Security Ruling 02-1p.

- Give further consideration to the claimant's maximum RFC and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations.

- Obtain supplemental evidence from a vocational expert to clarify the

---

[1] The criteria of an impairment are listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 416.920(d), 416.925, and 416.926).

2

effect of the assessed limitations on the claimant's occupational base.

On September 14, 2007, Colburn's physician ordered her to undergo a two-day functional capacity evaluation at a rehabilitation center, which she did on September 19 and 20. The examiner, Julie Mast, P.T., found that Colburn could not lift floor to waist, waist to overhead, or horizontally. She could not carry on the right or in front but could carry three pounds on the left. She could not bend while standing but could occasionally bend from sitting, and could not crawl, kneel, crouch or repetitively squat. She could sit 5.5 hours, stand 0.5 hours, and walk 0.5 hours in a workday. She could not climb stairs or ladders, or keep her balance.

The ALJ held a supplemental hearing on January 10, 2008. In attendance were Colburn, her counsel Andrew Haag, VE Thomas Dunleavy, and medical expert ("ME") Dr. Walter Miller. The ME testified that he did not think Colburn's functional capacity evaluation findings precluded medium exertional level work. "I don't find any basis for it in the record to be honest with you. I mean there's osteoarthritis facts seen in some of the x-rays and the MRI does show some evidence of mild arthritis, but to say that she can't stand on her two feet, two legs, isn't based in any findings in the record." He stated that he had reviewed Mast's functional capacity evaluation report and did not find any basis in the record for the limitations she proposed.

Colburn testified that she was 5 feet, 7 inches tall and weighed 354 pounds, that she could only lift a gallon of milk with two hands and required a motorized cart to shop for groceries.

VE Dunleavy testified that if Colburn was not limited by a need to sit or stand every half-hour, she could return to her old job as a home health aide. Otherwise, she could choose from a number of sedentary jobs. However, if the ALJ accepted the findings of the functional capacity

examiner, Ms. Mast, then Colburn would likely be judged unable to perform competitive, full-time work.

On February 28, 2008, the ALJ again issued an Unfavorable Notice of Decision. Specifically, she found that:

1. The claimant has not engaged in substantial gainful activity since December 4, 2004, the application date.

2. The claimant has the following severe combination of impairments: degenerative joint disease, diabetes, hypertension, asthma, obesity and mild osteoarthritis of the knees.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity (RFC) to perform light work with sit/stand option every ½ hour, no climbing ladders, ropes or scaffolds, occasional climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling, and no concentrated exposure to pulmonary irritants such as dust or fumes. She must avoid exposure to heights or moving machinery.

5. The claimant is able to perform her past relevant job as a home health aide at the light exertional level.

6. The claimant has not been under a "disability," as defined in the Social Security Act, since December 4, 2004, the date the application was filed.

Colburn filed a request for review of the Unfavorable Notice of Decision, but the Appeals Council found no basis for one. Colburn then sought judicial review pursuant to 42 U.S.C. § 405(g). The case was assigned to a Magistrate Judge ("MJ"). Colburn made three arguments - (1) that the ALJ erred in finding her capable of returning to her past relevant work; (2) that the VE's testimony did not support a denial at the fifth step of the sequential evaluation process,

and; (3) that the ALJ erred in failing to analyze her obesity and pain properly in accordance with Social Security Rulings 02-01p and 96-97p.

On March 30, 2009, the MJ made his Report and Recommended Decision. The MJ found the first of Colburn's three arguments well taken,[2] but that the resulting error did not require reversal of the defendant's final determination because the ALJ ultimately held that there were a significant number of alternative sedentary jobs available. (Report & Recommended Decision at 8). He found no merit in the second argument. As to the obesity argument, the MJ noted that the ALJ had adequately taken Colburn's condition into consideration.

On April 10, 2009, Colburn filed an Objection to the Magistrate Judge's Report & Recommendation, arguing that the MJ's decision with regard to Colburn's obesity was erroneous.

## II. LAW AND ANALYSIS

### A. Standard of Review

Section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g) authorizes judicial review of the Commissioner's final decision. When the Appeals Council denies review, the ALJ's decision stands as the final decision of the Commissioner. 20 C.F.R. § 404.981. (Def.'s Br. Merits at 6-7). The Act specifies that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is more than a "mere scintilla" of evidence but may be less than a preponderance; it is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales,* 402 US. 389, 401 (1971). (Def.'s Br. Merits at 7).

---

[2] That is, that she could not perform her previous job as a health care aide.

Substantiality of the evidence must be based upon the record taken as a whole. *Barney v. Secretary of Health and Human Services*, 743 F. 2d 448 (6th Cir. 1984); *Houston v. Secretary of Health and Human Services*, 736 F. 2d 365 (6th Cir. 1984); *Allen v. Califano,* 613 F. 2d 139 (6th Cir. 1980). The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and determine the case accordingly. *Richardson*, 402 U.S. at 399-400. Judicial review is limited to determining whether substantial evidence supports the ALJ's findings and whether the ALJ applied the correct legal standards in reaching his decision. 42 U.S.C. § 405(g); *Gibson v. Secretary of Health, Education and Welfare*, 678 F. 2d 653 (6th Cir. 1982).

A reviewing court may not decide the facts anew, reweigh the evidence, or substitute its own judgments for that of the Commissioner. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). In fact, the reviewing court may conclude that substantial evidence would support an alternative final determination and yet be obliged to affirm that determination. In *Mullen v. Bowen*, 800 F. 2d 535, at 545 (6th Cir. 1986), the court cited with approval the following from *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984):

> The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposition [sic] decision.

### B. Plaintiff's Objections to the Magistrate Judge's Report and Recommendation

Plaintiff objects to the Report and Recommended Decision of the MJ. The MJ recommended that final judgment be entered in the defendant's favor after finding that the ALJ complied with the requirements of Social Security Ruling 02-1p and with the Order of the

6

Appeals Council.  As set out below, Plaintiff's objection has no merit and thus, the Court adopts the Magistrate Judge's Report and Recommended Decision.

<u>1. ALJ's Failure to Undertake an Adequate Analysis under SSR 02-1p</u>

Social Security Ruling 02-1p acknowledges that the Agency considers obesity to be a medically determinable impairment and reminds adjudicators to consider the effects of obesity when evaluating disability. (Def's Br. Merits at 8).  On remand, the ALJ was asked to "evaluate Plaintiff's obesity in accord with the requirements outlined in SSR 02-1p."  (Pl.'s Objection Magistrate Judge's Report & Recommendation at 2).  Colburn argues that the ALJ's analysis "missed the mark" by too great a margin to amount merely to harmless error. *Id.*

The ALJ's evaluation consisted of the following:

> In making the RFC determination, I have considered class 3 morbid obesity (height of 5'7" and weight of 347 pounds (Body Mass Index (BMI) of 54.34) on February 14, 2005, 344 pounds (BMI of 53.87) on September 20, 2007, and 354 pounds (BMI of 55.44) at the hearing) in accordance with the Social Security Ruling 02-1p. No back disease was established. She does have a history of right knee tear of medial meniscus, degenerative joint disease, and contusion in May 2002, but her doctor's [sic] have not specifically attributed her condition to those problems or referred her for knee surgery, arthroscopy, or updated x-rays. They have not given her pain medications for asserted back pain. She had increased glucose levels and bouts with lower extremity swelling, but as noted was non-compliant with medications. (Tr. 18).

Colburn submits that this analysis does not comport with the spirit of SSR 02-1p's requirements.  Colburn argues that the point of SSR 02-1p is to remind judges to consider that obesity compounds symptoms such as pain in ways not identifiable by objective findings and must be considered in a disability evaluation accordingly.  (Pl.'s Br. Merits at 13 n. 8).

Though the MJ noted that the ALJ's statement could be more "illuminating as to [her]

7

thought process", the Court "[did] not agree with the contention that the ALJ's analysis was inconsistent with the spirit and purpose of SSR 02-1p, and failed to comply with its requirements." (Report & Recommendation at 9-10). "While bare bones, this Court must give credence to the ALJ's statement that in assessing the plaintiff's claim of disability she had considered the plaintiff's obesity under the standards of SSR 02-1p." *Id*. The ALJ's conclusion was within her "zone of choice" under the substantial evidence standard. *Id.*

The Sixth Circuit has previously held:

> Social Security Ruling 02-01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, "may" increase the severity of the other limitations. It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants.

*Bledsoe v Barnhart*, 165 Fed. Appx. 408, 412 (6th Cir. 2006). In fact, "the ALJ does not need to make specific mention of obesity if he credits an expert's report that considers obesity." *Id.* In this decision, the ALJ referenced Colburn's weight and body mass index reports, (Tr. at 18) satisfying the substantial evidence standard. Therefore, the Court holds that the ALJ's analysis was adequate based on the substantial evidence standard and is thus affirmed.

<u>2. ALJ's Failure Properly To Consider Colburn's Obesity and BMI When Determining Her RFC at the Fourth and Fifth Steps of the Sequential Evaluation Process</u>

To determine whether or not a Social Security claimant is disabled, the ALJ follows a five-step sequential analysis. (20 CFR § 416.920(a)). (Tr. at 13). SSR 02-1p instructs adjudicators to consider the effects of obesity at step three, when determining whether or not a listing is met or medically equaled, and at steps four and five, when determining an individual's residual functional capacity. (Def's Br. Merits at 8).

As part of the five-step analysis, a claimant must first demonstrate that he is not currently

8

engaged in "substantial gainful activity" at the time he seeks disability benefits.  Second, to warrant a finding of disability, a claimant must show that he suffers from a "severe impairment".  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  If the claimant does not meet the criteria, the adjudicator must determine the claimant's residual functional capacity, considering all impairments both mild and severe.  Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled.  For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.

     Though the ALJ found that Colburn was not engaged in substantial gainful activity and had a severe impairment, she did not find at step three that Colburn had a listed impairment.  Specifically, at step three, the ALJ noted that "back x-rays were negative.  Dr. Miller added that her impairments do not meet or equal any listed impairment.  I concur."  (Tr. at 16).  At steps four and five, the ALJ based her conclusions on the ME's findings that Colburn had enough residual functional capacity to perform sedentary work and so was not disabled.  In particular, the ALJ stated that "after considering the evidence of record, I find that the Claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible.  The objective medical record is fully consistent with the above RFC.

9

The medical expert testified that there was no objective evidence to support the functional capacity evaluation that she underwent in September 2007.  I agree." (Tr. at 17).

Colburn argues that the ALJ should have considered her exteme obesity based on her body-mass index.  (Pl.'s Objection to Magistrate Judges Recommendation & Report at 2).  However, under the Ruling, the fact that Colburn had a high body-mass index is a factor to be assessed, but is not determinative.  Specifically, SSR 02-1p states in question 6  that:

> There is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment. Neither do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes. Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

The ALJ assessed the Plaintiff's obesity at steps four and five.  She was not required to base any conclusions on Plaintiff's BMI.  Therefore, the Court holds that the ALJ properly considered Colburn's obesity during the sequential evaluation process.

### 3. ALJ's Failure Adequately to Explain Why She Did Not Find Plaintiff's Residual Functional Capacity Examination Determinative

Colburn contends that the ALJ failed to explain why she "minimiz[ed] her attention to her obesity and its effects on her other underlying medically determinable impairments, as required by the Ruling."  (Pl.'s Objection to Magistrate Judge's Report & Recommendation at 2).  Colburn argues that the ALJ failed to acknowledge the extent of her limitation evidenced during a "thorough, valid functional capacity examination, which supported a finding of disability." *Id.*  Colburn argues that under Ruling 02-1 adjudicators must "explain how we reached our conclusions on whether obesity caused any physical or mental limitations." *Id.*  Colburn also argues that, according to SSR 96-97p, the absence of objective medical evidence supporting an

10

individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence, particularly that of the functional capacity examination. *Id.*

According to SSR 02-1p, an explanation must be supplied when the adjudicator considers the RFC at steps four and five of the five-step analysis. The ALJ determined at step three that Colburn was not impaired.[3] She then proceeded to evaluate Colburn's RFC by applying the factors outlined in 20 CFR § 416.929.[4] These factors enable adjudicators to take into account "symptoms that can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone." (Tr. at 16). The ALJ noted that Colburn was "non-compliant with taking Glucophage, which was effective in reducing high blood sugar", that "the claimant alleged back pain, but all radiographical evidence was normal", and that Colburn "did not show for physical therapy." (Tr. at 17). The ALJ stated she did not find Colburn's statements concerning the intensity, persistence, and limiting effects of her symptoms "entirely credible." *Id.* Under 20 CFR § 416.929, the ALJ may "consider the opinion of a medical . . . expert concerning whether [the] impairment(s) could reasonably be expected to produce [the] alleged symptoms."

In this case, the ALJ credited the findings of the ME. (Tr. 16). The ME is a board-

---

[3] The ALJ specified that she determined Colburn's level of impairment at step three after considering 20 CFR §§ 416.920(d) (evaluation of disability - listed), 416.925 (medical considerations), and 416.925 (medical equivalance). (Tr. at 16).

[4] These factors include the claimant's daily activities, the location, duration, frequency and intensity of the claimant's pain, relevant treatments and medications, and any other factors to do with the claimant's functional limitations and restrictions due to pain. (Tr. at 17).

11

certified cardiac and orthopedic surgeon whose primary specialities are general surgery, cardiac surgery, orthopedic surgery, emergency and trauma surgery. His secondary specialities include occupational health and workman's compensation injuries. (Tr. at 29). Because his specialities include orthopedic surgery and occupational health, he has provided "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson*, 402 U.S. at 401, and the ALJ has met the standard of review. An ALJ need only address those impairments that he finds are substantially supported by the record as a whole. *Casey v. Sec'y of Health & Human Servs.*, 987 F. 2d 1230, 1235 (6th Cir. 1993). The ME did not find that the record supported Colburn's claims. (Tr. at 282). Therefore, the ALJ has properly considered Colburn's obesity and its effects, and accounted for "minimizing her attention" to Colburn's residual functional capacity examination results.

Therefore, the Court holds that the ALJ has offered an adequate explanation for not finding Colburn's residual functional capacity examination determinative.

### III. CONCLUSION

Plaintiff argues generally that the ALJ failed to give proper weight to Social Security Rulings 02-1p and 96-97p. Plaintiff argues in particular that the ALJ's analysis was inadequate, that the ALJ failed to take into account Plaintiff's obesity when determining Plaintiff's RFC at steps four and five of her analysis, and that the ALJ did not explain why the she did not accept the RFC report of September, 2007.

Because Social Security Ruling 02-01p does not mandate a particular mode of analysis, the ALJ's reference to the fact that she had considered Colburn's obesity in accordance with the Social Security Ruling 02-1p provided substantial evidence that the ALJ had complied with the

remand order to do so.

     The ALJ took the Plaintiff's obesity into consideration in making her disability determinations at steps four and five of the five-step sequential analysis mandated by 20 CFR § 416.920(a).  She explicitly based her determination on the absence of objective evidence.  Because the ALJ has already analyzed the subjective effects of Colburn's obesity in compliance with SSR 02-1p, this determination is adequate and based on substantial evidence.

     The ALJ provided an explanation for not accepting the Plaintiff's submitted residual functional capacity evaluation.  The ALJ found the findings of the ME more credible, based once again on the ME's objective evidence.  In light of the ME's expertise, this determination is also based on substantial evidence which is, once again, "such evidence as a reasonable mind might accept as adequate to support a conclusion."   Therefore, the Court ADOPTS the decision of the MJ to affirm that the Plaintiff is not disabled.

     IT IS SO ORDERED


July 1, 2009                                                                s/ Christopher A. Boyko  
Date                                                                      CHRISTOPHER A. BOYKO  
                                                                            United States District Judge